**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| EDWARD SMITH, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| THE HABIT RESTAURANTS, INC., CHRISTOPHER K. REILLY, ALLAN W. KARP, IRA ZECHER, A. WILLIAM ALLEN III, RUSSELL W. BENDEL, IRA FILS, JOSEPH J. KADOW, and KARIN TIMPONE, | ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on January 6, 2020 (the "Proposed Transaction"), pursuant to which The Habit Restaurants, Inc. ("Habit" or the "Company") will be acquired by YUM! Brands, Inc. ("Parent") and YEB Newco Inc. ("Merger Sub," and together with Parent, "YUM! Brands").

2. On January 5, 2020, Habit's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with YUM! Brands. Pursuant to the terms of the Merger Agreement, Habit's stockholders will receive $14.00 in cash for each share of Habit common stock they own.

3. On February 4, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Habit common stock.

9. Defendant Habit is a Delaware corporation and maintains its principal executive offices at 17320 Red Hill Avenue, Suite 140, Irvine, California 92614. Habit's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "HABT."

10. Defendant Christopher K. Reilly is a director of the Company.

11. Defendant Allan W. Karp is a director of the Company.

12. Defendant Ira Zecher is a director of the Company.

13. Defendant A. William Allen III is a director of the Company.

14. Defendant Russell W. Bendel is Chief Executive Officer, President, and a director of the Company.

15. Defendant Ira Fils is Chief Financial Officer, Secretary, and a director of the Company.

16. Defendant Joseph J. Kadow is a director of the Company.

17. Defendant Karin Timpone is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Habit (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of January 3, 2020, there were approximately 20,779,567 shares of Habit's common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if

defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

***Background of the Company and the Proposed Transaction***

26. Habit is a fast-casual restaurant concept that specializes in preparing fresh, made-to-order chargrilled burgers and sandwiches.

27. The Company has over 270 restaurants, including locations in thirteen states throughout California, Arizona, Utah, New Jersey, Florida, Idaho, Virginia, Nevada, Washington, Maryland, Pennsylvania, North Carolina, and South Carolina, as well as seven international locations.

28. On January 5, 2020, Habit's Board caused the Company to enter into the Merger Agreement with YUM! Brands.

29. Pursuant to the terms of the Merger Agreement, Habit's stockholders will receive $14.00 in cash for each share of Habit common stock they own.

30. According to the press release announcing the Proposed Transaction:

Yum! Brands, Inc. (NYSE: YUM) and The Habit Restaurants, Inc. (NASDAQ: HABT) ("The Habit Burger Grill") today announced that they have entered into a definitive agreement pursuant to which Yum! Brands will acquire all of the issued and outstanding common shares of The Habit Burger Grill for $14 per share in cash or a total of approximately $375 million. The board of directors of The Habit Burger Grill, acting on the recommendation of a special committee composed of non-executive independent directors, has unanimously approved the transaction.
. . .

Transaction Details

Yum! Brands intends to fund the transaction using cash on hand and available borrowing capacity under its credit facilities.

The transaction is subject to approval by The Habit Burger Grill's stockholders, regulatory approval and other customary closing conditions. The transaction is expected to be completed by the end of the second quarter of 2020.
Following the closing of the transaction, The Habit Burger Grill will remain based in Irvine, Calif., and will continue to be managed by The Habit Burger Grill's President and CEO Russell Bendel and Chief Financial Officer Ira Fils. Mr. Bendel will report directly to David Gibbs.

BofA Securities, Inc. acted as financial advisor and Mayer Brown LLP acted as legal advisor to Yum! Brands. Piper Sandler Companies (formerly Piper Jaffray Companies) acted as financial advisor and Ropes & Gray LLP acted as legal advisor to The Habit Burger Grill.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

31. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

32. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

33. First, the Proxy Statement omits material information regarding the Company's financial projections.

34. The Proxy Statement fails to disclose, for each set of projections, the line items used to calculate and adjustments made to: (i) Adjusted Total Revenue; (ii) Adjusted Restaurant Operating Costs; and (iii) Adjusted General and Administrative Expenses.

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

36. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Piper Sandler & Co., formally Piper Jaffray & Co. ("Piper").

37. With respect to Piper's Selected Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Piper in the analysis.

38. With respect to Piper's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples, metrics, and transaction values for the transactions observed by Piper in the analysis.

39. With respect to Piper's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the projected unlevered free cash flows from fiscal year 2020 to fiscal year 2023 and all underlying line items; (ii) the terminal values for the Company; (iii) the Company's non-TRA related net operating loss balance, tax benefits from the Umbrella Partnership C-Corporation structure, and tax benefit payments to TRA Holders; (iv) Piper's basis for applying EBITDA exit

multiples of 7.6x to 9.6x; and (v) the individual inputs and assumptions underlying the discount rates ranging from 10.9% to 15.9%.

40. With respect to Piper's Premiums Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed by Piper in the analysis; and (ii) the premiums paid in the transactions.

41. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

42. Third, the Proxy Statement omits material information regarding Piper.

43. The Proxy Statement fails to disclose whether Piper has performed past services for the Company or its affiliates, as well as the timing and nature of such services and the amount of compensation Piper received for providing such services.

44. The Proxy Statement also fails to disclose the timing and nature of the past services Piper provided to KarpReilly LLC's affiliates.

45. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46. Fourth, the Proxy Statement fails to disclose whether the Company entered into any non-disclosure agreements that contained "don't ask, don't waive" provisions that are or were preventing the counterparties from requesting waivers of standstill provisions to submit offers to acquire the Company.

47. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were

permitted to do so, when in fact they are or were contractually prohibited from doing so.

48.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Recommendation of the Board of Directors; (ii) Opinion of Financial Advisor; and (iii) Prospective Financial Information.

49.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Habit

50.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Habit is liable as the issuer of these statements.

52.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

53.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

55. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of Habit within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Habit and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

62. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

      D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

      E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

      F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: February 11, 2020            **RIGRODSKY & LONG, P.A.**

                                By: */s/ Gina M. Serra*
                                    Brian D. Long (#4347)

**OF COUNSEL:**                 Gina M. Serra (#5387)
                                    300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                Wilmington, DE 19801
Richard A. Maniskas           Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300    Facsimile: (302) 654-7530
Berwyn, PA 19312              Email: bdl@rl-legal.com
Telephone: (484) 324-6800       Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com        *Attorneys for Plaintiff*